775 F.2d 964
 Stanley GREEN, Appellant,
v.
UNITED STATES DEPARTMENT OF LABOR, Appellee.
UNITED STATES DEPARTMENT OF LABOR, Appellee,
v.
Stanley GREEN, Appellant,
and
Stacker, Ravich and Simon, Appellee.
Stanley GREEN
v.
UNITED STATES DEPARTMENT OF LABOR.
UNITED STATES DEPARTMENT OF LABOR, Appellee,
v.
Stanley GREEN, Appellee,
and
Stacker, Ravich & Simon, Appellant.
STACKER, RAVICH & SIMON, Appellant,
v.
GENERAL ELECTRIC COMPANY, Appellee.
 Nos. 84-5217, 84-5230.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1985.
Decided Oct. 18, 1985.
 
 W. Scott Herzog, Minneapolis, Minn., for Green.
 Eric Magnuson, Minneapolis, Minn., for Stacker.
 John S. Koppel, Dept. of Justice, Washington, D.C., for U.S.
 Howard J. Bergman, Minneapolis, Minn., for General Elec.
 Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and PHILLIPS,* Senior Circuit Judge.
 LAY, Chief Judge.
 
 
 1
 This appeal involves a case under the Federal Employees' Compensation Act (FECA), 5 U.S.C. Secs. 8101-8193 (1982), in which the district court entered summary judgment in favor of the United States on its claim for reimbursement out of the proceeds of a federal postal employee's state court damage award against a third party tortfeasor. The district court also granted summary judgments on the various cross-claims of the other parties to the action. For the reasons discussed below, we affirm the judgment in favor of the government, but reverse in part the dismissal of the cross-claims between the employee and his attorney, and remand to the district court for further proceedings in accord with this opinion.
 
 Background
 
 2
 On April 27, 1977, Stanley Green was severely injured during the course of his employment with the United States Postal Service. While Green was assisting employees of General Electric Company with maintenance and repair of a high voltage electric system, Green received an electrical shock, resulting in a heart attack and second and third degree burns over one-third of his body. Green received $94,631.41 in FECA payments, representing hospital and medical expenses, lost wages, and permanent partial disability.
 
 
 3
 In August 1977, Green, represented by the law firm of Stacker, Ravich and Simon (Stacker), commenced a negligence action against General Electric in Minnesota state district court. During trial, Stacker attempted to introduce evidence of medical expenses incurred by Green, but the trial court sustained General Electric's objection to this evidence. Stacker apparently made no attempt to introduce evidence of Green's lost wages. Accordingly, no evidence of medical expenses or lost wages was submitted to the jury and the jury was instructed only on pain and suffering and loss of future wages. The jury returned a special verdict finding Green 9% negligent, General Electric 21% negligent, and the United States government 70% negligent; it determined Green's damages to be $475,000. Under Minnesota law, Green's damages were reduced by the 9% causal fault attributed to him by the jury, and Green was awarded $432,250. General Electric appealed the decision to the Minnesota Supreme Court, which affirmed without opinion.
 
 
 4
 On February 11, 1980, the United States Department of Labor notified Green that he was obligated to reimburse the government out of his state court damage award pursuant to 5 U.S.C. Sec. 8132.[1] Green declined to comply based on Stacker's advice that the government had no right to reimbursement. On February 12, 1982, the government notified Green that because he had failed to reimburse the government, his scheduled permanent partial disability payments would be suspended.
 
 
 5
 In September 1982, Green commenced an action in federal district court seeking a declaratory judgment that he had no obligation to reimburse the government for the FECA payments and that he was entitled to the remaining permanent partial disability payments withheld by the government. The government counterclaimed against Green and his attorney, Stacker, seeking reimbursement of $63,765.56 pursuant to the formula in 5 U.S.C. Sec. 8132.[2] Green and Stacker then cross-claimed against each other. Green alleged that Stacker was negligent in handling his state court tort action against General Electric and sought reimbursement in the event he was found liable for the $63,765.56 claimed by the government. Stacker denied that it was negligent and sought indemnity or contribution from Green in the event that it was found jointly and severally liable to reimburse the government. Stacker also impleaded General Electric, seeking indemnity or contribution in the event that Stacker could not recover from Green.
 
 
 6
 Green, Stacker, and the government filed motions for summary judgment, and General Electric filed a motion to dismiss Stacker's third-party complaint. The district court[3] granted Green and Stacker summary judgment on their request for declaratory relief, holding that they were not required to reimburse the government for Green's FECA payments to the extent those payments represented medical expenses and lost wages not recovered by Green in state court. The district court also ruled that the government was entitled to summary judgment on its claim for reimbursement from Green's damage award for amounts representing lost future wages and that Green and Stacker were jointly and severally liable to the government for those payments. The court further determined, however, that Stacker was entitled to indemnity or contribution from Green for any amounts Stacker was required to pay. Finally, the district court granted General Electric's motion to dismiss Stacker's third party complaint.
 
 
 7
 In May 1984, the United States Supreme Court decided United States v. Lorenzetti, 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984), reversing the decision of the Third Circuit[4] on which the district court relied in determining that Green and Stacker were not required to reimburse the government. The government moved for reconsideration of the district court's order in light of the Supreme Court decision. On September 20, 1984, the district court vacated its prior order and granted summary judgment in favor of the government, holding that according to Lorenzetti section 8132 requires a FECA beneficiary to reimburse the government out of any damages award or settlement made in satisfaction of third party liability for the personal injury or death of a federal employee. Consequently, the government was entitled to reimbursement for Green's FECA payments representing lost wages and medical expenses even though Green's award against General Electric did not include compensation for these losses. The remaining holdings of the district court's order were unaffected by the Lorenzetti decision.[5] Green and Stacker appeal the district court's decision. We affirm in part, reverse in part, and remand Green's cross-claim against Stacker to the district court for plenary trial.
 
 Discussion:
 
 8
 I. The government's claim against Green and Stacker.
 
 
 9
 Three major issues are raised on appeal. First, both Green and Stacker argue that the district court erred in ruling that the government is entitled to reimbursement for FECA payments to Green representing medical expenses and lost wages because Green's recovery against General Electric compensated him solely for pain and suffering and future lost wages. We disagree.
 
 
 10
 In United States v. Lorenzetti, 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984), the Supreme Court held that section 8132 on its face creates a general right of reimbursement, not conditioned on the nature of the loss for which the beneficiary received payment in the third party tort action. Id. 104 S.Ct. at 2289. Thus, the federal employee in Lorenzetti was required to reimburse the federal government for FECA payments representing lost wages and medical expenses even though his third-party recovery represented only compensation for pain and suffering. The Supreme Court emphasized that the primary purpose of section 8132 was to minimize the cost of the FECA program to the federal government and that this policy was furthered by construing section 8132 to create a general right of reimbursement, however harsh that result might be in a particular case. Id. at 2291. Based on Lorenzetti, the district court allowed the Government reimbursement from Green's award against General Electric, even though that award did not include compensation for lost wages or medical expenses. We agree with the district court that Lorenzetti controls the case and that the government is thus entitled to reimbursement out of Green's state court damage award.
 
 
 11
 Green and Stacker make several arguments for the inapplicability of Lorenzetti to the facts of this case. First, Green argues that Lorenzetti is inapplicable where, as here, the federal government is itself partially responsible for its employee's injuries. The Ninth Circuit has recently held, however, that the government's negligence does not affect its right to reimbursement under 5 U.S.C. Sec. 8132. See Ward v. United States Department of Labor, 726 F.2d 516, 517 (9th Cir.1984); see also Randall v. United States, 282 F.2d 287, 288 (D.C.Cir.1960), cert. denied, 365 U.S. 813, 81 S.Ct. 693, 5 L.Ed.2d 692 (1961) (government is entitled to reimbursement under section 8132 even though the employee's death was caused in part by the negligence of a government co-employee). Furthermore, Green's argument requires a strained reading of section 8132. Although the policy arguments for denying the federal government reimbursement when it is partially responsible for an employee's injuries or death are compelling, Green's interpretation of section 8132 seems clearly to offend the Supreme Court's "plain meaning" approach in Lorenzetti. See United States v. Lorenzetti, 104 S.Ct. at 2289.
 
 
 12
 Stacker's argument that Lorenzetti should not apply where the government can proceed directly against the third party tortfeasor for reimbursement is also without merit. In Lorenzetti, the government could not have itself sued the third party tortfeasor under section 8131 for the plaintiff's medical expenses and lost wages because the third party tortfeasor was liable only for non-economic losses under the state no-fault statute. In contrast, Stacker argues, Minnesota law would allow a plaintiff to litigate or settle that part of a claim that is not subject to the subrogation claim of the workers' compensation carrier, preserving for direct resolution between the workers' compensation carrier and the third party tortfeasor that part of the employee's claim that is subject to subrogation. Stacker thus asserts that because the government could sue General Electric directly for Green's medical expenses and lost wages under Minnesota law, Lorenzetti should not apply.
 
 
 13
 Initially, we express doubt regarding whether Minnesota law has any effect on the government's reimbursement rights under the FECA and, even assuming that it does, whether Minnesota law would allow claim splitting under the facts presented here. In any event, the federal government has wide latitude under the FECA to either require the beneficiary to assign its right of action against the third party under section 8131, or to seek reimbursement from the beneficiary under section 8132. See United States v. Hayes, 254 F.Supp. 849, 851 (W.D.Ky.1966); cf. Lorenzetti, 104 S.Ct. at 2290.
 
 
 14
 Both Green and Stacker also argue that the government should be equitably estopped from seeking reimbursement from them. Although the Supreme Court has recently declined to rule that estoppel may never be asserted against the federal government, see Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984), "it is well settled that the government may not be estopped on the same terms as any other litigant," id. At a minimum, estoppel will never be allowed as a defense against the federal government unless the private party demonstrates the presence of the traditional elements of an estoppel, id., and that the government engaged in "affirmative misconduct," INS v. Miranda, 459 U.S. 14, 17, 103 S.Ct. 281, 282, 74 L.Ed.2d 12 (1982) (per curiam); McDermott v. United States, 760 F.2d 879, 882 (8th Cir.1985).
 
 
 15
 Green and Stacker attempt to establish their estoppel defense by arguing that the government could have easily protected its reimbursement rights by either participating in Green's state court action against General Electric or by providing Stacker with requested information regarding a breakdown of Green's FECA benefits. As we previously noted, however, the federal government has unfettered discretion to determine whether to require an assignment of the beneficiary's claim under section 8131 or to seek reimbursement from the beneficiary under section 8132. See United States v. Hayes, 254 F.Supp. at 851; cf. United States v. Lorenzetti, 104 S.Ct. at 2290. The government's failure to become involved in Green's state court action thus does not preclude it from seeking reimbursement from Green or Stacker.
 
 
 16
 Nor does the government's delay in providing a breakdown of Green's FECA benefits support a claim of estoppel. Several alleged facts do suggest that the government's delay did prejudice Green's ability to recover medical expenses and lost wages both at trial and on appeal. For example, although Stacker requested information from the government on January 28, 1980, and February 21, 1980, the government had not provided the information by June 3, 1980, the date of the pretrial conference before the Minnesota Supreme Court. Although this delay may constitute negligence by the government, it does not rise to the level of "affirmative misconduct" required before this court will consider whether an estoppel defense may be asserted against the United States. See McDermott v. United States, 760 F.2d at 883; see also INS v. Miranda, 459 U.S. at 18, 103 S.Ct. at 283. Thus, Green and Stacker failed to establish a prima facie case of estoppel against the government. We therefore affirm the district court's ruling that the government is entitled to reimbursement under 5 U.S.C. Sec. 8132.
 
 
 17
 The trial court also determined that Green and Stacker were jointly and severally liable to reimburse the government under 5 U.S.C. Sec. 8132. Section 8132 provides that "[n]o court, insurer, attorney, or other person shall pay or distribute to the beneficiary or his designee the proceeds of such suit or settlement [recovered against a third party tortfeasor] without first satisfying or assuring satisfaction of the interest of the United States." 5 U.S.C. Sec. 8132 (1982). The legislative history of the 1974 amendments to the FECA shows that this sentence was added to expedite reimbursement by granting the government a lien on the proceeds of any third party recovery to the extent of the government's reimbursement rights. See S.Rep. No. 93-1081, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 5341, 5351. Any person who deals with funds against which the government has a lien under section 8132 is thus liable to the United States for conversion. See United States v. Limbs, 524 F.2d 799, 803 (9th Cir.1975). We agree with the district court that Stacker became liable to the government under section 8132 when Stacker accepted Green's damage award from General Electric, deducted the attorney fee and forwarded the remainder to Green without protecting the government's reimbursement rights. We therefore affirm the district court's decision that Green and Stacker are jointly and severally liable to reimburse the government.[6]II. Stacker's claim against General Electric.
 
 
 18
 After the government counterclaimed against Green and Stacker, Stacker impleaded General Electric, seeking indemnity or contribution in the event Stacker was required to reimburse the government.[7] The district court granted General Electric's motion to dismiss Stacker's third party claim, stating only that "there is no basis in law for [Stacker's] claim for indemnity or contribution against General Electric." We must agree with the district court.
 
 
 19
 Stacker bases its claim of contribution or indemnity on one of two theories: (1) General Electric's underlying negligence in causing Green's injuries and (2) General Electric's violation of its duty under section 8132 to protect the government's right of reimbursement before transferring the proceeds of the state court damage award to Stacker and Green.
 
 
 20
 Stacker cannot, however, base its claim for contribution or indemnity on General Electric's underlying negligence in causing Green's injuries. Both indemnity and contribution require a common liability of the party charged and the party sought to be charged to the injured party for the same damages. See Lawrence v. Great Northern Ry. Co., 98 F.Supp. 746, 747 (D.Minn.1951) (applying Minnesota law); Grothe v. Shaffer, 305 Minn. 17, 23, 232 N.W.2d 227, 232 (1975); American Mutual Liability Insurance Co. v. Reed Cleaners, 265 Minn. 503, 509, 122 N.W.2d 178, 182 (1963). Stacker is liable to the government for $63,765.56 under section 8132 of the FECA for failing to protect the government's right of reimbursement. In contrast, General Electric's underlying negligence in causing Green's injuries involves a duty General Electric owes to Green, not to the government. Only by focusing on Stacker's and General Electric's violation of section 8132 does a common liability exist, making Stacker's claim for indemnity or contribution even possible.
 
 
 21
 Stacker's claim must fail as well, however, under this alternative basis for contribution or indemnity. Recent Supreme Court cases make it clear that a defendant held liable under a federal statute has no standing to sue others who have also violated the statute unless (1) the federal statute expressly or implicitly provides for such an action, (2) Congress empowered federal courts to develop substantive law under the statute, or (3) a right of contribution or indemnity is necessary to protect a uniquely federal interest. See Texas Industries, Inc. v. Radcliff Materials, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (under the Clayton and Sherman Acts); Northwest Airlines v. Transport Workers Union, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (under the Equal Pay Act and Title VII). None of these exceptions apply here. Thus, we find that Stacker has no claim for indemnity or contribution based on General Electric's violation of section 8132 or General Electric's underlying negligence.
 
 
 22
 III. Green's and Stacker's cross claims against each other.
 
 
 23
 Green argues on appeal that the district court erred in granting summary judgment in favor of Stacker on its claim for indemnity or contribution from Green and in denying Green's cross-claim against Stacker, finding as a matter of law that Stacker was not negligent in handling Green's state court action. In its September Order, the district court noted that "Mr. Green admitted that he was primarily liable to the government." The district court thus determined that Stacker was entitled to contribution or indemnity for any amounts it was required to reimburse the government. The court summarily disposed of Green's claim that Stacker, and not Green, should be ultimately liable to reimburse the government because of Stacker's alleged negligence in representing Green in the state court action. Instead, the district court determined that Green's failure to recover medical expenses and lost wages was due to the state trial court's ruling that Green was not the real party in interest as to those damages, rather than to Stacker's negligence. The court therefore entered summary judgment in favor of Stacker on its claim against Green for indemnity or contribution and on Green's claim against Stacker for negligence.
 
 
 24
 A. Stacker's claim against Green.
 
 
 25
 Although the district court did not explain its determination that, absent negligence on the part of Stacker, Green must indemnify Stacker,[8] we think it clear that if the government has a right of reimbursement the beneficiary of the FECA payments and the third party recovery must ultimately bear the burden of reimbursement. Section 8132 implicitly provides for this result. Since 1916, the FECA has required the beneficiary to reimburse the United States out of the proceeds of a third party recovery. See Federal Employees' Compensation Act, ch. 458, Sec. 27, 39 Stat. 747 (1916) (current version at 5 U.S.C. Sec. 8132 (1982) ). Only in 1974, in an attempt to expedite the reimbursement process, did Congress amend that section of the FECA to give the United States a lien against the proceeds of a third party recovery. See 5 U.S.C. Sec. 8132 (1982); see also S.Rep. No. 93-1081, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 5341, 5351. Clearly, Congress intended that the beneficiary of the FECA payments and the third party recovery must bear the ultimate burden of reimbursement. We therefore agree with the district court that a party liable to the United States under the lien language of section 8132 is generally entitled to indemnity from the ultimate beneficiary.[9]
 
 
 26
 B. Green's claim against Stacker.
 
 
 27
 A finding in favor of Stacker on its claim against Green, however, is premature in the present case. Green has cross-claimed against Stacker alleging that he was denied recovery from the third party tortfeasor General Electric for his lost wages and medical expenses (covered by the FECA payments) because of Stacker's negligence in handling Green's state court action. The district court granted summary judgment on Green's claim in favor of Stacker. We disagree with this ruling. In reviewing a district court decision granting summary judgment, this court applies the same standard as that used by the district court in granting the motion. Mandel v. United States, 719 F.2d 963, 965 (8th Cir.1983). It is well established that summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see, e.g., Mandel v. United States, 719 F.2d at 965. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences derived therefrom in the light most favorable to the nonmoving party. McGee v. Hester, 724 F.2d 89, 91 (8th Cir.1983).
 
 
 28
 In support of its conclusion that the state court's ruling, and not Stacker's negligence, precluded Green from recovering medical expenses and lost wages, the district court relied on the affidavit of a Stacker attorney and notes taken by a Stacker attorney at a pretrial conference. Several other facts, however, support a conflicting inference that Green may have been precluded from recovering those damages because of Stacker's negligence. For example, the affidavit of an attorney for General Electric states that the state court excluded evidence of lost wages and medical expenses because Stacker failed to lay the necessary foundation for the admission of this evidence. This is supported by the government's claim that Stacker did not attempt to obtain a breakdown of Green's FECA payments until January 28, 1980, the first day of trial. Additionally, a Stacker attorney admits in an affidavit that he did not attempt to introduce evidence of Green's wage loss. Whether this is because of General Electric's successful objection to evidence of medical expenses or because the Stacker attorney failed to obtain the necessary documentary support from the government in time for trial is unclear. Furthermore, although a Stacker attorney promised on February 21, 1980, to send the United States Department of Labor a letter by Green authorizing Stacker to obtain information from the Department of Labor on Green's behalf, Green's authorization was apparently not obtained until May 28, 1980. This may in part explain the government's failure to supply Stacker with a breakdown of Green's FECA benefits in time for a pretrial conference before the Minnesota Supreme Court on June 3, 1980. Finally, although General Electric appealed the state jury verdict in favor of Green, Stacker apparently did not appeal on behalf of Green the trial court's exclusion of evidence of Green's medical expenses.[10]
 
 
 29
 Viewing the facts and inferences drawn therefrom in the light most favorable to Green, a factual controversy exists as to Green's claim that Stacker was negligent. To establish a prima facie case of attorney negligence in Minnesota, the client must show the existence of the attorney-client relationship, the acts constituting the alleged negligence, that those acts were the proximate cause of the damage, and that but for such negligence, the plaintiff would have been successful in the prosecution or defense of the action. See Blue Water Corp., Inc. v. O'Toole, 336 N.W.2d 279, 281 (Minn.1983); Christy v. Saliterman, 288 Minn. 144, 150, 179 N.W.2d 288, 293-94 (1970). Clearly, Green and Stacker had an attorney-client relationship. Furthermore, Green was injured by his failure to recover medical expenses and lost wages from General Electric because Green is now required to reimburse the government for these amounts. As discussed above, Green also alleged several facts that suggest Stacker was negligent. Although Green did not submit an affidavit of an expert stating that such conduct constitutes negligence, expert evidence is not required where the conduct complained of can be adequately evaluated by a layperson. See Hill v. Okay Constr. Co., Inc., 312 Minn. 324, 336-37, 252 N.W.2d 107, 116 (1977). A layperson is competent to determine whether Stacker's failure to obtain needed information prior to trial was negligent. Thus, Green's failure to submit an expert's affidavit attesting to that fact does not preclude a finding that there was a question of material fact on this issue. Finally, although the district court did find that Green did not recover medical expenses and lost wages from General Electric because the state trial court ruled that Green was not the real party in interest as to those damages, several facts before the district court suggest that Green failed to recover those damages because of Stacker's negligence.
 
 
 30
 Because there were several issues of material fact as to Stacker's negligence, we find the trial court erred in granting summary judgment in favor of Stacker. We therefore reverse the district court's holding that Green has no action over against Stacker and remand to the district court for trial on the merits the question of Stacker's negligence in pursuing Green's state court action. If the district court determines that Stacker was negligent, Stacker is liable to Green for the $63,765.56 Green now owes to the government because had Stacker diligently pursued Green's claim for medical expenses and lost wages against General Electric, Green would have received an increased award from General Electric from which the government would have received reimbursement for the FECA payments.
 
 
 31
 In order to avoid inconsistent judgments, we reverse the grant of summary judgment on the cross-claims of Stacker against Green and Green against Stacker and remand those cross-claims to the district court with the following directions. A plenary trial is required on Green's cross-claim for negligence against Stacker. If the trier of fact finds that Stacker was not negligent, judgment in favor of Stacker should be entered on Green's cross-claim against Stacker. Correspondingly, the district court's grant of summary judgment in favor of Stacker against Green should be reentered with the result that, if Stacker is required to pay any part of the government's joint and several judgment against Green and Stacker, Stacker is entitled to judgment on its cross-claim for indemnity against Green for the amount of the monies paid.
 
 
 32
 On the other hand, if the trier of fact finds that Green's failure to recover his lost wages and medical expenses (represented by the FECA payments) from General Electric in the state court action was proximately caused by Stacker's negligence, the court shall then enter judgment as follows: Green shall be awarded these damages from Stacker on his cross-claim with the understanding that the monies should be paid to the government as reimbursement for the FECA payments; once the government's reimbursement claim against Green and Stacker is satisfied, the court shall find that Green's judgment against Stacker is also satisfied. In this event, Stacker's cross-claim against Green shall be denied as moot.
 
 Conclusion
 
 33
 For the reasons set forth above, we affirm the district court's determination that Stacker and Green are jointly and severally liable to reimburse the government. We also affirm the district court's dismissal of Stacker's third party claim against General Electric. Because we find a question of material fact exists regarding Stacker's negligence, we reverse the district court's grant of summary judgment in favor of Stacker on Green's negligence claim against Stacker. We also reverse entry of summary judgment on Stacker's claim against Green with the understanding that it shall be disposed of in accordance with the directions set forth in this opinion. The case is remanded. Stacker and Green shall pay the government's costs incurred in this appeal; Stacker shall pay General Electric's costs; and as between Stacker and Green on their cross-claims, each party shall pay its own costs.
 
 
 
 *
 The HONORABLE HARRY PHILLIPS, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation. Judge Phillips participated in the oral argument and at conference agreed with the vote of the court. However, due to his untimely death he did not have an opportunity to review the opinion
 
 
 [1]
 Section 8132 provides that:
 If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of a suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury. No court, insurer, attorney, or other person shall pay or distribute to the beneficiary or his designee the proceeds of such suit or settlement without first satisfying or assuring satisfaction of the interest of the United States. The amount refunded to the United States shall be credited to the Employees' Compensation Fund. If compensation has not been paid to the beneficiary, he shall credit the money or property on compensation payable to him by the United States for the same injury. However, the beneficiary is entitled to retain, as a minimum, at least one-fifth of the net amount of the money or other property remaining after the expenses of a suit or settlement have been deducted; and in addition to this minimum and at the time of distribution, an amount equivalent to a reasonable attorney's fee proportionate to the refund to the United States.
 5 U.S.C. Sec. 8132 (1982).
 
 
 [2]
 Although Green received $94,631.41 in FECA payments, the beneficiary is entitled to retain costs, one-fifth of the remaining damage or settlement award, and an amount equivalent to a reasonable attorney's fee proportionate to the United States' refund. See supra note 1
 
 
 [3]
 The Honorable Paul A. Magnuson, United States District Court for the District of Minnesota
 
 
 [4]
 See Lorenzetti v. United States, 710 F.2d 982 (3d Cir.1983), rev'd, 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984)
 
 
 [5]
 Thus, the district court reinstated its findings that Green and Stacker were jointly and severally liable to reimburse the government, that Stacker was entitled to contribution or indemnity from Green for any amounts that it was required to reimburse the government, and that General Electric should be dismissed as a party
 In a suit arising out of the same facts, General Electric brought an action against the government under the Federal Tort Claims Act. General Electric sought contribution from the government for the damages award arising out of Green's state court action against General Electric in which the jury found the government 70% negligent. The district court granted summary judgment against General Electric on the ground that General Electric failed to file timely notice of its claim with the appropriate federal agency. General Electric did not appeal. See General Electric v. United States Postal Service, No. 3-85-118 (D.Minn.1985).
 
 
 [6]
 Stacker's argument that, because the government could have sued General Electric under section 8132 as an "other person" who paid proceeds of a suit without protecting the government's interest, the government must sue General Electric rather than Stacker is without merit. Clearly, the Government could seek reimbursement from General Electric under section 8132 on the same theory that it used against Stacker. As a party found jointly and severally liable, however, Stacker "cannot compel the plaintiff [the government] to make others parties to the action, or complain because they have not been joined." W.P. Keeton, Prosser and Keeton on the Law of Torts Sec. 47, at 327 (5th ed. 1984) (citations omitted)
 
 
 [7]
 A defendant may implead a third party who is or may become liable to the defendant for all or part of the plaintiff's claim. Fed.R.Civ.P. 14(a). This rule allows the accelerated determination of contingent and third party liability. See Williams v. Ford Motor Credit Co., 627 F.2d 158, 160 (8th Cir.1980). Although impleader is proper under the federal rules only where there is a substantive right to the relief sought, it is available even though in state court an independent action would first be required to vindicate the substantive right. C. Wright, The Law of Federal Courts Sec. 576, at 511 (4th ed. 1984)
 
 
 [8]
 Although the district court stated in its order that Stacker was entitled to "indemnity and/or contribution" from Green, Stacker's claim against Green is clearly for indemnity rather than for contribution. Indemnity enables a person to recover reimbursement from another for the discharge of a liability which, as between that person and the other, should have been discharged by the other. Restatement of Restitution Sec. 76 (1937). Contribution allows one who has discharged more than his or her fair share of liability or burden to recover from another who is also liable the proportionate share that the other should bear. Id. at Sec. 99. See generally W.P. Keeton, Prosser and Keeton on the Law of Torts Sec. 51 (5th ed. 1984)
 
 
 [9]
 We recognize that the Supreme Court has been reluctant to find rights of indemnity or contribution among those potentially liable under federal statutes. See Texas Industries, Inc. v. Radcliff Materials, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (refusing to find a right of contribution among joint tortfeasors under the Clayton and Sherman Acts); Northwest Airlines v. Transport Workers Union, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (refusing to find a right of contribution among joint tortfeasors under the Equal Pay Act and Title VII); see also supra Part II of this opinion. In those cases, however, the Court specifically found that Congress neither expressly nor implicitly provided for rights of indemnity or contribution under the federal statutes in question. See Texas Industries, 451 U.S. at 639-40, 101 S.Ct. at 2066-67; Northwest Airlines, 451 U.S. at 90-95, 101 S.Ct. at 1580-83. In contrast, our examination of the legislative history of the United States' right of reimbursement under the FECA leads us to conclude that Congress intended that a party held liable under the lien language of section 8132 be entitled to reimbursement from the beneficiary of the FECA payments and the third party recovery
 
 
 [10]
 Several cases would have supported Stacker's argument on appeal that it is error for a trial court to exclude evidence of special damages in an action against a third party tortfeasor merely because the plaintiff received FECA compensation for those injuries. See, e.g., Oklahoma City v. Caple, 187 Okla. 600, 105 P.2d 209 (1940); Cary v. Burris, 169 Or. 24, 127 P.2d 126 (1942); cf. Van Tassel v. Horace Mann Insurance Co., 296 Minn. 181, 188-89, 207 N.W.2d 348, 352 (1973) (collateral source rule in Minnesota)