BERRY *v.* ARNOLD SCHOOL DISTRICT.

4-5794 137 S. W. 256

Opinion delivered February 26, 1940.

*Nat T. Dyer,* for appellant.

. *John C. Ashley,* for appellee.

MEHAFFY, J. The appellant, Loyce D. Berry, sued the Arnold School District for a breach of contract of employment as teacher, alleging that the board of directors of Arnold School District, on April 23, 1938, entered into a written contract with appellant to teach in said district. The contract provided, among other things, that Berry was employed for a term of eight months, provided funds are available for such term, commencing on July 11, 1938, and agreed to pay him $80 for each school month. The contract provided that the teacher would give said school his entire time and best efforts during school hours; use his utmost influence with parents to secure a full attendance of pupils, and generally to comply with all the requirements of the laws of this state in relation to teachers, to the best of his ability.

Appellant began to teach under said contract on July 11, 1938, and taught to September 9, 1938, when a vacation was arranged. On October 10, 1938, appellant reported for duty and was on said date discharged by a majority of the board of directors acting in their of-

ficial capacity. They appeared with Jim Martin, sheriff of Baxter county, who served upon appellant an order signed by R. C. Love, judge of the Baxter county court, directing the sheriff to take from the appellant the key to the door of the school house and the key to a steel book case therein, and deliver them to the school directors.

The appellant alleges that in order to serve the peace and by order of a majority of the directors, but protesting by written notice that appellant would hold Arnold School District liable for the breach of his contract, he peaceably surrendered the keys and ceased to teach in said district; that his discharge was without just cause and he was then and at all times during the term of his contract, ready and willing to teach said school; that he was paid for services rendered the sum of $40 and appellee owed him for services rendered under his contract the sum of $140; that at the time he entered into said contract, he was engaged in selling life insurance, and over week-ends continued during the period he taught under said contract to sell life insurance; he prayed judgment against the district and directors for the $140 and interest, and for the further sum of $460 with interest from April 11, 1938, a total of $600.

On June 13, 1939, appellant took a non-suit as to the directors, and on said date the school district filed its separate answer. The answer was a general denial alleging that the district had paid him $40 for services rendered the first two weeks; that he failed to give his entire time and efforts to teaching, and was overbearing and quarrelsome towards the pupils and whipped them in an inhuman manner, and was abusive and quarrelsome towards patrons and directors; that he appeared during school hours intoxicated and is not of good moral character, and is unfit to teach in the public schools; that because of his conduct the board of directors at the end of the third week informed appellant that he had breached his contract and that the same was thereby terminated. Over the protest of the board, appellant con-

tinued to teach until September 9, 1938, when, without consulting the board, he closed the school. The appellee denies that it breached the contract, denies that appellant was damaged, and that he should recover any amount.

Before the evidence was offered the court made the following statement:

"A valid contract of employment is admitted; and that appellant taught three weeks under this contract, and was paid for two week's services and tendered $20 for the third week's services.

"The district contends that plaintiff was discharged at the end of the third week, while he contends that he was not discharged until October 10th.

"The contract having been admitted, the burden of proof shifts to the defendant district to show by a preponderance of the evidence that the plaintiff breached his contract."

There was a jury trial and a verdict and judgment for $200 in favor of appellant.

At the close of the testimony the appellant requested that the court direct a verdict for him and also to instruct the jury that the contract provided that it cannot be terminated except by mutual consent, and that no such consent was shown, and that the appellant requested a trial by the board on charges, which was refused. He asked the court to instruct the jury that he was not discharged by authority of a resolution of the board; that he was discharged without just grounds.

The court overruled this motion, and exceptions were saved. After the verdict and judgment the appellant filed motion for new trial which was overruled, and the case is here on appeal.

The evidence showed that the appellant whipped one of the pupils, 15 years old, with a paddle. He whipped the boy the first time for saying a riddle, and the second time for throwing a paper-wad.

Barrett Richardson, the boy he whipped, testified that he was 15 years old; that he whipped him the first time for telling a riddle; he got the riddle out of the Kansas City Star; made him get in a stooped position

to whip him with the side and edge of the paddle; hit him twelve or fourteen licks; there were bruises on him; they were black and about that long (indicating) and as wide as the edge of the paddle.

Floyd Neal testified that he saw Barrett Richardson the morning after he was whipped; saw one place across his hip three or four inches, and one right across there (indicating) that was four or five inches long; they looked black and blue and something like an inch wide; he came up to witness' house limping and showed him the places.

One of the directors testified that it was reported to him that Mr. Berry had gone from the school room and came back drinking and used a paddle on Barrett Richardson, and that before the board employed Mr. Berry they forbade him using the paddle; after he heard of the whipping, he tried to get Mr. Berry to discard the paddle and he would not do it, and they tried to discharge him and he said he would not be fired. Witness took Richardson to Norfolk and he filed a complaint and when the constable came back to place Mr. Berry under arrest he was standing in the school house. He looked at witness and said that some one had said that he had been drinking, and any one that said he had been drinking was "a damn liar and I will beat hell out of him." Witness further said that they told Mr. Berry they would not hire a teacher that used a paddle and Berry made no comment on this; the board passed a resolution discharging Mr. Berry.

There was other evidence about the teacher's drinking, and also about his leaving school and leaving Thurl Whitaker in charge, and other witnesses testified to the whipping with the paddle, and to the bruises on the boy.

Appellee's witnesses testified that appellant was not drunk; that they smelled no whiskey on his breath, and the appellant himself testified at length and said he never used any of the school hours to sell insurance; that his average monthly earnings from selling life insurance was $123.12; witness admitted whipping the boy, but said the first time he only hit him four licks with the paddle, and eight licks the second time; not too severely,

but enough that he knew it. Appellant then testified about his contract and his inability to secure employment elsewhere.

The appellant's first contention is that he was entitled to recover for services rendered to date of September 9, 1938. He states that he was discharged on October 10, 1938. He then argues that it was necessary, in order to make a valid contract, that there be a meeting of the board of directors, of which meeting all of the members had notice, and that a teacher cannot be discharged except at a regular meeting of the board at which a quorum is present and of which all members have been notified. He alleges in his complaint that he reported October 10th for duty at the school house, and was on that date summarily discharged by Snellgrove and Griffith; a majority of the board of directors appeared with the sheriff who served on appellant an order to deliver up the keys. Appellant further states in his complaint that in obedience to the order served on him he peaceably surrendered the keys and ceased teaching in said district, notifying the directors at the time that he would hold the school district liable for a breach of his contract, and then brought suit for a breach of his contract. He admits that a teacher might breach his contract in several ways, and that is what the appellee contends in this case; that the teacher breached his contract. It is contended that he breached it by drinking whiskey and by unlawfully beating one of the pupils and in some other ways.

The evidence is in conflict as to whether he drank whiskey or not. There is no dispute, however, about his leaving the school at one time, being gone about an hour and a half, leaving a young pupil in charge, and it is also undisputed that he whipped one of the pupils with a paddle in violation of the direction of the board, and that he whipped him so severely that marks and bruises were left on his body, which were seen by several persons. This evidence is not denied.

In discussing the authority to revoke a teacher's license and the authority of the board to discharge a teacher for breach of contract, this court said: "It is

the duty of the board of directors, expressly enjoined by statute, to hire suitable teachers . . . to establish an adequate number of schools; to keep them in operation; to enforce all necessary rules and regulations for the government of teachers and pupils; and to visit at least twice in each year each school, and observe the discipline, mode of teaching. and progress of pupils. . . . The duty to hire teachers is not discharged by the hiring of immoral or incompetent persons, although they may have obtained a license to teach from the examiner. While the board of directors can not go outside of those having license to secure teachers, it should not hire unknown persons, without making inquiry as to their morality and competency, simply because of the license. The duty to establish and keep in operation schools is not met by the employment of teachers and keeping them at a school house; but it demands that suitable persons shall be kept as teachers, and a school maintained adapted to the intellectual and moral advancement of pupils." *School District* v. *Maury*, 53 Ark. 471, 14 S. W. 669.

We think the evidence as to intoxication and leaving the school would be insufficient to justify the board in discharging the teacher. The evidence on the question of intoxication is not only slight, but in conflict. We also think, however, that the conduct of the teacher in whipping the pupil with a paddle made of flooring was sufficient to justify the board in discharging the teacher. A. teacher has the right to inflict reasonable corporal punishment upon a pupil for insubordination, disobedience, or other misconduct, but he has no right to inflict punishment to enforce an unreasonable rule, and the punishment must not be inflicted with such force or in such manner as to cause it to be cruel or excessive.

"As a general rule a school teacher, in so far as it may be reasonably necessary to the maintenance of the discipline and efficiency of the school, and to compel a compliance with reasonable rules and regulations, may inflict reasonable corporal punishment upon a pupil for insubordination, disobedience, or other misconduct." 56 C. J. 855, 856.

This court said, in the case of *Dodd* v. *State*, 94 Ark. 297, 126 S. W. 834: "There is no evidence that punishment administered for failure to obey was excessive."

It appears from this record that the punishment in the instant case was excessive. The boy was punished twice on the same day, each time being whipped with a paddle. The first time was for suggesting a riddle, and the next time because the pupil threw a paper-wad at the teacher. These acts on the part of the pupil, especially the last one, justified the teacher in inflicting reasonable punishment on the pupil, but he was not justified in inflicting excessive or cruel punishment.

If the board had a right to discharge the teacher, then it would not be liable to him for any sum except what it owed him for services already rendered; it is only in cases where the discharge is not justified that the person discharged is entitled to damages.

We find no error and the judgment is affirmed.