Daniel WISE, a minor By and Through his parents, Leroy WISE and Sandra Wise, husband and wife, Leroy Wise and Sandra Wise, individually; Michael Decker, a minor By and Through his parents, Dwain Decker and Mary Decker, husband and wife, and Dwain Decker and Mary Decker, individually, Plaintiffs,

v.

The PEA RIDGE SCHOOL DISTRICT #109, as a public body corporate; James C. Carlton, individually, and in his official capacity as Superintendent of Pea Ridge Schools; Bill Alvarez, individually and in his official capacity as Superintendent of Pea Ridge Schools; Bruce Norwood, individually and in his official capacity as Principal of Pea Ridge Schools; Russell Davidson, individually and in his official capacity as Principal of Pea Ridge Schools; Kenneth Patterson, individually and in his official capacity as President of the Pea Ridge School Board of Education; Ronald Foster, individually and in his official capacity as President of the Pea Ridge School Board of Education; Kent Webb, individually and in his official capacity as Vice–President of the Pea Ridge School Board of Education; Tony Fletcher, individually and in his official capacity as Secretary of Pea Ridge School Board of Education; Douglas McKinney, individually and in his official capacity as a Member of the Pea Ridge School Board of Education; Larry Walker, individually and in his official capacity as Pea Ridge Coach, Defendants.

Civ. No. 87–5027.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Dec. 23, 1987.

Charles S. Trantham, Fayetteville, Ark., for plaintiffs.

Walter B. Cox, Davis, Cox & Wright, Fayetteville, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is a case in which two students of the Pea Ridge School District claim violation of their constitutional rights. Daniel Wise, by his parent and next friend, LeRoy Wise sued the defendants in their individual and official capacities for denying him both procedural and substantive due process in violation of 42 U.S.C. § 1983 because of an act of corporal punishment administered to him on February 20, 1986. Michael Decker, by his parents and next friends, Dwain Decker and Mary Decker, brought virtually identical claims against the defendants as a result of being confined for a period of several days to an alternative school program administered by the School District. Although the com-plaint is phrased primarily in terms of procedural due process, the plaintiffs assert that their main claim is premised on a violation of substantive due process. The defendants are the Pea Ridge School District, employees of the School District and members of the School Board.

This case was originally set for trial during the week of August 17, 1987. As a result of a trial brief filed on behalf of the defendants, it was drawn to the court's attention that subject matter jurisdiction over the § 1983 claim might be lacking in light of the Supreme Court's decision in *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). In an effort to resolve this issue, the court held a hearing on August 12, 1987, at which time the parties were advised, in the interests of judicial economy, that the court wished to reach a final determination concerning subject matter jurisdiction prior to there being a trial on this matter. Therefore, the court requested that the defendants file a motion for summary judgment. This motion for summary judgment is now before the court for decision.

*Factual Background*

Daniel Wise was a sixth grade student at Pea Ridge School in Pea Ridge, Arkansas. Daniel and his parents allege that "Coach Larry Walker did inflict appreciable physical pain and harm by using a paddle causing severe bruises and welts to the buttocks of plaintiff." On February 20, 1986, Daniel was one of a group of six boys who were playing "dodge ball" on the sidelines during a physical education class. According to Daniel, the boys had developed their own version of the game which involved attempting to hit each other in the head with a basketball. Coach Walker after observing this behavior, required the boys to sit out the rest of the class, and after class, administered discipline to all six boys by means of corporal punishment. Each boy was given "two licks" on the buttocks with a wooden paddle approximately one-half inch thick, three inches wide, and twenty-two inches long. This punishment was administered by Coach Walker in the presence of two witnesses as is required by the

disciplinary guidelines adopted by the School Board. The disciplinary policy authorizes various methods of discipline including corporal punishment.

Portions of the record introduced with the motion for summary judgment and response thereto reveal that this same group of six boys had been warned by Coach Walker, approximately one month before the incident which is the subject of this lawsuit, not to play "dodge ball" in this manner as it was dangerous. A second warning was apparently given at some point prior to the paddling incident. Although Daniel states he did not directly hear this second warning, he did know it had been given.

As a result of this paddling, Daniel developed bruises on his buttocks. After school Daniel was taken to a doctor by his father and brother. No treatment was given and Daniel was advised to take Tylenol for any pain he was suffering. Daniel did not miss any school the day of the paddling or at any time thereafter as a result of the paddling.

Mr. Wise, Daniel's father, filed a complaint that night at the local police department against Coach Walker stating that the punishment administered was excessive. In addition, Mr. Wise complains that he was not notified either prior to or after the punishment was administered as is required by the school's policy. The school's discipline policy states "the principal and the student's parent or legal guardian will be notified by the teacher when corporal punishment is administered."

It appears from the record that the principal did at least attempt to contact Mr. Wise. Telephone records were submitted which indicate a phone call was placed to Mr. Wise's place of employment—the number he provided the school. Mr. Alvarez's affidavit stated he was informed that Mr. Wise would not talk with him. Despite this, Mr. Wise states he was never informed of the phone call. No other efforts were taken to inform Mr. Wise of the punishment.

Michael Decker was also a student at Pea Ridge School. Michael was classified as a special education student because of a learning disability—in this case a reading disorder. As a result, Michael has several classes each day with the Special Education teacher. The Special Education Committee at the school had determined that Michael would not be adversely affected by the disciplinary policies of the school district.

Michael and his parents claim deprivation of his due process rights under the Fourteenth Amendment by virtue of his being confined for three days, as a disciplinary measure, in a "small room where he was unsupervised and was denied access to a restroom." In addition, his parents assert they were not given notice of this disciplinary measure and that Michael's mother was denied access to Michael's school records.

Pea Ridge School District maintains an alternative school which is sometimes referred to as the Special Assignments Class or commonly called SAC. A student who has been a behavior or discipline problem may be assigned to SAC in lieu of suspension from school. Basically, it is a form of in-school suspension.

The students assigned to SAC are in a separate classroom for the entire day or days depending on the length of assignment. Michael describes this classroom as being approximately 8 by 10 feet or 10 by 12 feet, carpeted, containing eight study carrels, a teacher's desk, windows, and being located next to the restroom. Defendants state the room contains approximately 34 square feet per child assuming the room is at its capacity of eight students. Defendants further state that this figure is above the minimum 30 square feet of classroom space per child recommended by Arkansas law. Pictures of this room were also submitted to the court.

The students assigned to SAC are given their normal classroom assignments which are completed in duplicate with one copy going to their "regular" teacher and one copy remaining with the "SAC" teacher. Different teachers supervise the SAC students throughout the day and, according to Michael, the room is left unsupervised approximately one-third of the time. Part of

this time tapes are being played for the students.

The SAC students eat lunch together in the school cafeteria but are not allowed to intermingle with the other students. Restroom breaks are apparently taken at three times throughout the day. If a student needs to visit the restroom at other times it is necessary to ask permission of the supervising SAC teacher. Michael states that some teachers are more lenient than others in allowing a student extra restroom breaks. Michael further states that he has never asked for permission for an extra restroom break and been denied. Rather he seems to suggest he didn't ask because he felt the request would be denied based on his observations.

A student may be assigned to SAC for various infractions of the school rules including unexcused tardies. The policy states "students who aquire [sic] three (3) unexcused tardies per nine weeks will automatically be assigned two (2) days of Alternative School. Any student who accumulates more than three unexcused tardys [sic] per each nine week period will result in an extra day of assignment to Alternate School for each additional unexcused tardy."

According to Michael, a student becomes aware of an upcoming assignment to SAC by means of a list which is posted at various places throughout the school. Michael's name was placed on this list because he acquired seven unexcused tardies during a nine week period. Michael and his parents state that these tardies were due to various reasons including a urinary tract problem. The statements of Michael and his parents, however, indicate that no one at the school was ever informed that Michael had a urinary tract problem.

The record indicates that prior to Michael's being placed on in-school suspension (SAC), Mary Decker, his mother, was informed of the upcoming disciplinary action by Michael. Ms. Decker then contacted one of the school's employees about it and was informed that Michael had seven unexcused tardies. Ms. Decker also indicated that she was aware of the school's policy

concerning unexcused absences and in fact had been given and acknowledged receipt of a copy of the parent-student manual containing the discipline policy at the beginning of the school year.

The court has reviewed the facts in detail in order that the punishment inflicted may be viewed in perspective. The plaintiffs have included in their response to the summary judgment motion various affidavits concerning several other nonparty students. Although the content of those affidavits has caused the court to have some concern over the actions of the defendant school district and its employees, these affidavits cannot be used to bypass the requirement that the plaintiffs themselves must have suffered constitutional deprivations at the hands of the defendants. Had the plaintiffs themselves been able to withstand a summary judgment motion, such evidence may have proved helpful to the plaintiffs in establishing the "policy" or "custom" alleged.

*Discussion*

In ruling on a motion for summary judgment the judge's function is not to weigh the evidence, but rather is to determine as a matter of law whether there are genuine issues of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Niagara of Wisconsin Paper Corp. v. Paper Industry Union–Management Pension Fund*, 800 F.2d 742, 746 (8th Cir.1986). In making this determination, the court must "view the facts and all reasonable inferences derived therefrom in the light most favorable to the nonmoving party." *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., et al.*, 824 F.2d 582, 585 (8th Cir.1987); quoting *Green v. United States Department of Labor*, 775 F.2d 964, 973 (8th Cir.1985). Summary judgment should only be granted "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Wilson v. Bud Myers*, 823 F.2d 253, 256 (8th Cir.1987) citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In light of these stan-

dards the court will review the applicable law.

It is well settled that the constitutional rights of students and teachers follow them into the classrooms. *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed. 2d 731 (1969). "Nonetheless it is also clear that school officials may properly prescribe and control conduct in the schools, consistent with fundamental constitutional safeguards." *Tinker, supra*, at 507, 89 S.Ct. at 737. The state has a vital interest in maintaining an orderly and effective educational system for its youth, and thus "they [school officials] have inherent authority to maintain order and hence have latitude and discretion in formulating rules and regulations and general standards of conduct." *Tate v. Board of Ed. of Jonesboro, Ark., Special School District*, 453 F.2d 975, 978 (8th Cir.1972). Discipline is regarded as essential to the functioning of a school system. Accordingly, schools are permitted to maintain such discipline and order as will permit the educational processes to be carried out. *See Petrey v. Flaugher*, 505 F.Supp. 1087 (E.D.Ky.1981); *Carter v. Taylor*, 409 F.Supp. 1162 (E.D. Tenn.1975).

The use of corporal punishment as a means of disciplining school children has a long history in this country and in fact dates back to colonial periods. *See Ingraham v. Wright*, 430 U.S. 651, 660–63, 97 S.Ct. 1401, 1406–08, 51 L.Ed.2d 711 (1977) (for a discussion of the history of corporal punishment in this country.) The school system is considered to be fulfilling the parental function of training and educating a child. The privilege of a teacher is generally regarded as extending to the infliction of any corporal punishment which is reasonable under the circumstances; but a teacher is not privileged to use any force which goes beyond that reasonably necessary for the purpose to be accomplished. Prosser and Keeton, *The Law of Torts* § 27 (5th Ed.1984). *See also* Restatement (Second) of Torts § 147(2)–§ 152; *Ingraham v. Wright, supra*, at 661, 97 S.Ct. at 1407. "The reasonableness of the punishment may also depend upon whether the com-

mand given is one necessary for the proper training or education of the child, or his control." Restatement (Second) of Torts § 150 Comment d.

The Supreme Court of Arkansas has recognized this common law rule and has stated that "a school teacher, in so far as it may be reasonably necessary to the maintenance of the discipline and efficiency of the school, and to compel compliance with reasonable rules and regulations, may inflict reasonable corporal punishment upon a pupil for insubordination, disobedience, or other misconduct." *Berry v. Arnold School District*, 199 Ark. 1118, 1124, 137 S.W.2d 256 (1940), quoting 56 C.J.S. 855, 856. *See also Dodd v. State*, 94 Ark. 297, 126 S.W. 834 (1910).

"To the extent that the force is excessive or unreasonable, the educator in virtually all States is subject to possible civil and criminal liability." *Ingraham v. Wright, supra*, at 661, 97 S.Ct. at 1407. Arkansas is one of the states which does apparently recognize this common law safeguard and regards excessive force as being outside the privilege. *See Berry v. Arnold School District*, 199 Ark. 1118, 137 S.W.2d 256 (1940); *Dodd v. State*, 94 Ark. 297, 126 S.W. 834 (1910).

In *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Supreme Court addressed the role of the federal courts when asked to review decisions of school administrators and stated:

It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. See *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 [89 S.Ct. 733, 21 L.Ed.2d 731] (1969); *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 [63 S.Ct. 1178, 87 L.Ed. 1628] (1943); *Goss v. Lopez*, [419] U.S. 565 [95 S.Ct. 729, 42 L.Ed. 2d 725] (1975). But § 1983 does not extend the right to relitigate in federal-court evidentiary questions arising in

school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees. See *Epperson v. Arkansas*, 393 U.S. 97, 104 [89 S.Ct. 266, 270, 21 L.Ed.2d 228] (1968); *Tinker, supra*, [393 U.S.] at 507 [89 S.Ct. at 736–37].

*Id.* at 326, 95 S.Ct. at 1003.

In *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), the court dealt directly with an instance of corporal punishment in the public schools. The corporal punishment administered in *Ingraham* was much more severe than that at issue in the current case. One petitioner, Ingraham, was subjected to more than 20 "licks" with a paddle while being held over a table in the principal's office. *Id.* at 657, 97 S.Ct. at 1405. The other petitioner, Andrews, suffered several paddlings and was on two occasions struck on his arms, once depriving him of the full use of his arm for a week. *Id.* The court found that "corporal punishment in public schools implicates a constitutionally protected liberty interest" but held that state common law remedies were "fully adequate to afford due process." *Id.* at 672, 97 S.Ct. at 1413. The court further noted that the child's liberty interest in avoiding corporal punishment is subject to historical limitations. *Id.* at 675, 97 S.Ct. at 1414–15. In summary the court stated "[i]n those cases where severe punishment is contemplated, the available civil and criminal sanctions for abuse—considered in light of the openness of the school environment—afford significant protection against unjustified corporal punishment." *Id.* at 678, 97 S.Ct. at 1416.

Although the court in *Ingraham* had denied review of the portion of the petition dealing directly with substantive due process and thus focused primarily on procedural due process, the finding that a fundamental liberty interest is implicated by the infliction of corporal punishment necessarily implies that at some point the infringement of the liberty interest would constitute a violation of substantive due process. *See Ingraham* 430 U.S. at 659 n. 12 and 679 n. 47, 97 S.Ct. at 1416 n. 47. This interpretation of *Ingraham* is further buttressed by the following language:

> The concept that reasonable corporal punishment in school is justifiable continues to be recognized in the laws of most States. See Part II, *supra*. It represents "the balance struck by this country," *Poe v. Ullman* 367 U.S. 497, 542 [81 S.Ct. 1752, 1776, 6 L.Ed.2d 989] (1961) (Harlan, J., dissenting), between the child's interest in personal security and the traditional view that some limited corporal punishment may be necessary in the course of a child's education. Under that longstanding accommodation of interests, there can *be no deprivation of substantive rights as long as disciplinary corporal punishment is within the limits of the common-law privilege.* (Emphasis added).

*Id.* at 676, 97 S.Ct. at 1415. Therefore, the necessary conclusion is that at some point excessive infliction of corporal punishment would violate the child's substantive due process rights. *See also Garcia v. Miera*, 817 F.2d 650 (10th Cir.1987); *Rubek v. Barnhart*, 814 F.2d 1283 (8th Cir.1987); *Hall v. Tawney*, 621 F.2d 607 (4th Cir. 1980).

In addition, from the language quoted above, it is apparent that the Supreme Court did not regard disciplinary corporal punishment—to the extent it was within the limits of the common law privilege—to constitute a deprivation of substantive rights. *Id.* The disciplinary conduct at issue in *Ingraham* was found to be within the perimeters of the common law privilege. *Ingraham* at 674–75. Cf. *Hall v. Tawney*, 621 F.2d 607, 611 (4th Cir.1980) (Expressly rejecting this inference.). *But see Garcia v. Miera*, 817 F.2d 650, 654 (Ordinary corporal punishment violates no substantive due process rights.). *See also*

Prosser and Keeton, *The Law of Torts* § 27 (5th Ed. 1984).

■ For the reasons stated above, we conclude that at some point the infliction of disciplinary corporal punishment becomes so excessive as to amount to a deprivation of substantive due process rights. Clearly there is and can be no easy dividing line; but the court is constrained to conclude that in light of *Ingraham* what is considered "ordinary" corporal punishment is not redressable as a violation of substantive due process rights. Whether this court believes that corporal punishment is "right" or "wrong" is beside the point. Reasonably inflicted corporal punishment in the schools is permitted by the law of this country. As the court has previously had the opportunity to note, the court is not allowed "to decree all that is right and condemn and bar all that is wrong, or what a particular judge believes is either right or wrong, even if that judge desires to.... Instead, this court is confined to determining whether any of plaintiff's 'federally protected rights' have been violated." *Stermetz v. Harper,* 612 F.Supp. 423, 427 (W.D.Ark.1984) vacated on other grounds, 763 F.2d 366 (8th Cir.1985).

The concept of substantive due process encompasses the right to be free from bodily harm. The focus of the inquiry is the conduct itself and whether the conduct "shocks the conscience," or involves the use of force "offensive to human dignity." *Rochin v. California,* 342 U.S. 165, 172–74, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952). In police brutality cases the Eighth Circuit Court of Appeals has consistently applied the following four factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; and (4) whether force was applied in good faith effort to effectuate the arrest or maliciously and sadistically for the very purpose of causing harm. *Davis v. Forrest,* 768 F.2d 257, 258 (8th Cir.1985); *Bauer v. Norris,* 713 F.2d 408, 412 (8th Cir.1983); *Rogers v. Rulo,* 712 F.2d 363, 368 (8th Cir.1983), *cert. denied,* 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984);

*Putman v. Gerloff,* 639 F.2d 415, 420 (8th Cir.1981) quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

In *Davis, supra,* the court found no error in an instruction which required "a bodily intrusion so brutal, demeaning, and harmful as to literally shock the conscience." 768 F.2d at 258. This language was quoted from *Hall v. Tawney, supra.* In *Hall* the court phrased the inquiry in the following terms:

> the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

*Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980) citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973).

Plaintiffs in their briefs rely heavily on *Hall v. Tawney,* 621 F.2d 607 (4th Cir. 1980). In *Hall* the Fourth Circuit Court of Appeals was faced with a motion to dismiss filed by the defendant which rested essentially on the authority of *Ingraham. Id.* at 609. The allegations of the complaint revealed the plaintiff had been severely beaten and was hospitalized for ten days as a result of the incident. It was further alleged that the plaintiff was presently receiving the treatment of specialists for possible permanent injuries to her lower back and spine. *Id.* at 614. Because of the procedural posture of the case the court concluded it could not dismiss the case. *Id.*

Plaintiffs assert the present situation is analogous to that in *Hall.* The court cannot agree. A comparison of the complaints belies such an assertion. In *Hall* the allegations stated the plaintiff was severely beaten, hospitalized, and that a possibility for permanent injury existed. From this court's discussion above, it is clear that the claims of Daniel Wise and Michael Decker do not begin to reach the magnitude of that

alleged in *Hall*. *See also Doe "A" v. Special School District*, 637 F.Supp. 1138 (E.D.Mo.1986) (sexual assault of minor handicapped students held to state a substantive due process claim). Contrary to the posture of the case before the court in *Hall*, this court has before it a fully documented motion for summary judgment.

In *Garcia* the court noted "[t]he threshold for recovery on the constitutional tort for excessive corporal punishment is high. But the allegations with respect to the first beating, that this nine-year-old girl was held up by her ankles and hit several times with a split board of substantial size on the front of her legs until they bled—supported by evidence of a permanent scar—are sufficient [to withstand defendants' motion for summary judgment]." *Id.* at 658. As was the case in *Hall*, the court cannot conclude that the present situation is analogous with that in *Garcia*.

■ Under the circumstances of this case, the court concludes that the punishment administered was not excessive and thus was within the common law privilege. Daniel Wise was one of a group of boys who were all given "two licks" on the buttocks with a wooden paddle. This punishment came after at least two warnings had been given that the conduct in question would not be tolerated. Daniel did not miss any school and had no injury other than a temporary sting and some red welts which allegedly lasted several days.

Although such a form of punishment may be humiliating and demeaning[1], the behavior in this instance cannot be said to reach the level of a violation of substantive due process. Substantive due process operates to protect individuals from arbitrary and unreasonable acts. Plaintiffs have advanced the following formulations of the "test" to be used in determining whether this right has been violated:

Corporal punishment is a deprivation of substantive due process when it is arbit[r]ary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning. Citing *Woodard v. Los Fresnos Indepen-*

*dent School Dist.*, 732 F.2d 1243 (5th Cir.1984); and *Jefferson v. Ysleta Independent School Dist.*, 817 F.2d 303 (5th Cir.1987).

Reckless use of excess force violates the Constitution. citing *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir.1970), overruled on other grounds *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

Whether the force applied caused injury so severe, was so disproportionate to the need presented and was so inspired by malice or sadism rather than merely careless or unwise excess or zeal and that it amounted to a brutal or inhumane abuse of official power literally shocking to the conscience. Citing *Hall v. Tawney*, 621 F.2d 607 (4th Cir.1980).

Clearly, the punishment administered to Daniel Wise does not amount to a violation of substantive due process. The punishment inflicted cannot be said to have been inflicted maliciously and sadistically for the very purpose of causing harm. Some steps had to be taken to prevent the boys from inflicting harm on each other.

■ Likewise, the disciplinary actions taken against Michael Decker do not violate substantive due process. Michael was placed on in-school suspension for three days as a result of seven unexcused tardies. Both Michael and his mother were aware of the consequences of unexcused absences—neither attempted to make any explanation for these tardies to school officials. Although a special education student, the school had determined in advance that Michael would not be adversely affected by the school's disciplinary policies. Therefore, the court concludes that the claims of both Daniel Wise and Michael Decker do not as a matter of law state violations of substantive due process rights. Likewise, in light of *Ingraham v. Wright, supra*, plaintiff's claims do not as a matter of law state violations of procedural due process rights.

Because of the court's ruling above it is unnecessary to examine in depth defend-

---

**1.** That is one of the purposes of it, thus provid-   ing a deterrent effect on future misconduct.

ants' arguments that they are entitled to qualified immunity. In addition, the court will not examine the plaintiffs' pendent state claims. "Before federal pendent jurisdiction can be exercised over a non-federal claim, the trial court must make a threshold determination that a substantial federal claim, arising from the same nucleus of operative fact, is raised by the allegations of the complaint. Without the existence of a substantial federal claim, no federal pendent jurisdiction over the non-federal claim exists." *Kimbrough v. Arkansas Activities Assn.*, 574 F.2d 423, 427 (8th Cir.1978) citing *Hagans v. Lavine*, 415 U.S. 528, 536–39, 94 S.Ct. 1372, 1378–80, 39 L.Ed.2d 577; *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Recent case law has recognized that the court has a certain amount of discretion which allows it to retain jurisdiction on a pendent state claim. *Razorback Ready Mix Concrete Co., Inc. v. Weaver*, 761 F.2d 484, 489 n. 1 (8th Cir.1984). However, in a case such as this, when the federal claim drops out prior to trial the federal court should not proceed. *See Curtis v. Sears, Roebuck & Co.*, 754 F.2d 781, 785 (8th Cir.1985).

*Rule 11 Sanctions*

Both parties have requested the court to impose sanctions pursuant to Rule Eleven (11) of the Federal Rules of Civil Procedure. Rule 11, as amended in 1983, provides in part:

> Every pleading, motion, or other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name.... The signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.... If a pleading, motion, or other paper is signed in violation of this rule, the court upon motion or upon its own initiative, shall impose upon the person who signed

it, ... an appropriate sanction ... including a reasonable attorney's fee.

The standard for applying sanctions is objective. *Adduono v. World Hockey Association*, 824 F.2d 617, 621 (8th Cir.1987). citing *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1127 (5th Cir.1987); *Zaldivar v. Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986). A pleading is tested for frivolousness. The "language [of amended Rule 11] is intended to reduce the reluctance of courts to impose sanctions." Advisory Committee Note to Rule 11, 97 F.R. D. 165, 198 (1983). In addition, the "language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances." *Id.*

Rule 11 applies when an attorney has signed a pleading, motion or other paper. *Adduono, supra.* The attorney has an affirmative duty "to conduct a 'reasonable inquiry' into both the factual and legal basis of any document...." *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1127 (5th Cir.1987). A reasonable inquiry has been defined as "that amount of examination into the facts and legal research which is reasonable under the circumstances of the case. Of course, the conclusion drawn from the research undertaken must itself be defensible. Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions." *Zaldivar v. Los Angeles*, 780 F.2d 823, 830 (9th Cir.1986).

According to the Advisory Committee notes whether a reasonable inquiry was undertaken depends on such factors as how much time for investigation was available; whether the signer had to rely on a client for information as to the facts underlying the pleading; whether the pleading was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar. 97 F.R.D. 165, 199. Moreover, a district court should reflect upon equitable considerations such as the sanctioned party's or lawyer's assets, the experience of the lawyer, and whether the area of the law required

special expertise. *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1439 (7th Cir.1987). Particularly relevant to the case at hand is the comment of the Court of Appeals for the Seventh Circuit that the court should also consider "whether the party seeking fees caused the litigation to be longer than necessary," because a duty of mitigation exists for that party. *Id.*

■ The court has given serious consideration to whether sanctions should be imposed in this case. The language of Rule 11 is mandatory—if an attorney violates the provisions of that rule the court has no alternative but to impose sanctions. *See Glenn v. Farmers & Merchants Ins. Co.*, 649 F.Supp. 1447, 1454 (W.D.Ark.1986). Although the court believes that the claims asserted by Mr. Trantham have little merit, it cannot say that plaintiffs' claims were so unwarranted as to show a lack of good faith. In making this statement the court has given consideration to the experience of plaintiffs' counsel and to the fact counsel had to rely on the information supplied by his clients who were relatively uneducated. A substantial amount of documentation was compiled suggesting that there are problems within the defendant school system. However, as the court notes *supra*, this documentation cannot be used to bypass the fact that the plaintiffs themselves must have been subject to a constitutional deprivation.

In addition, the court finds the comment of the Court of Appeals for the Seventh Circuit that consideration should be given to the mitigation duty of the party seeking sanctions persuasive. Although apparently asserting all along that plaintiffs' claims were frivolous, defendants' counsel made no move to file a motion to dismiss or a motion for summary judgment until just a few short days before trial when he advised the court through a trial brief that the defendants believed a directed verdict could appropriately be entered by the court at the close of plaintiffs' case. While the court does not suggest this was an improper means of notifying the court, it appears to have been a "better later than never" approach. Clearly, counsel, upon conclusion of his "reasonable inquiry" into the basis of the suit, could have initially filed a motion to dismiss, or as discovery revealed what defendants' counsel refers to as the frivolousness of the case, counsel could have filed a motion for summary judgment much earlier in the case.

■ Mr. Trantham, plaintiffs' counsel, requests the court to impose sanctions on the ground that Mr. Cox's motion for sanctions was meritless. Mr. Trantham suggests to the court that the actions of defendants' counsel were meant to threaten and intimidate a young, inexperienced attorney. The court cannot award sanctions on such a basis. Rule 11 is meant to operate as a type of "policing" mechanism and imposes an obligation on all attorneys to refrain from frivolous filings. Counsel can adequately protect themselves from any "intimidation" factor by fulfilling their obligations under Rule 11 prior to filing any pleadings. For the foregoing reasons, the court believes that sanctions are not warranted against either party in this case.

*Conclusions*

For the reasons set forth above, the court finds that in the particular situation presented by this litigation, that the disciplinary measures taken by the defendants did not as a matter of law constitute violations of the plaintiff's procedural or substantive due process rights. Since this decision removes the federal claims of plaintiffs, the court will not retain jurisdiction over the pendent state law claims. Therefore, defendant's motion for summary judgment is granted.

A separate order in accord with this memorandum opinion will be concurrently entered.